IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAMERON MCCARY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-1570 |
| | : | |
| F.N.U. KNARR, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                      **JULY 17, 2026**

Plaintiff Cameron McCary, an unrepresented litigant, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his rights arising from events that allegedly occurred while he was incarcerated at SCI Phoenix.  Currently before the Court are McCary's Complaint ("Compl." (ECF No. 2)) and his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 23).  McCary asserts claims against the following SCI Phoenix employees: Therapeutic Counselor Knarr, Q-Unit Manager Wychunis, Q-Unit Counselor Holiday, Superintendent Terra, Deputy Superintendent Sipple, Q-Unit Housing Officer Anderson, T-Unit Manager Nunez, R-Unit Manager Thomas, K-9 Officer John Doe 1, Property Inventory Officers John Does 2 and 3, Program Review Committee Team Members Jane/John Does 4, 5, and 6, State Drug Treatment Program Director Stover, and Therapeutic Community Counselor Vereen. (Comp. at 3-9.)  He also asserts claims against Pennsylvania State Senator Tracy Pennycuick and Montgomery County.  (*Id*.)  For the following reasons, the Court will grant McCary leave to proceed *in forma pauperis*.  The following claims will be dismissed with prejudice: claims against Montgomery County, claims based on the inadequacy of the SCI Phoenix grievance system, federal claims based on loss of personal property, First Amendment retaliation claims

based on McCary's refusal to provide information in connection with a drug investigation, First Amendment retaliation claim against John Doe I, Fourteenth Amendment due process claims based on placement on a Restricted Housing Unit ("RHU") and denial of participation in special programming and housing.  The following claims will be dismissed without prejudice: First Amendment retaliation claims against all Defendants except John Doe I, supervisory liability claims against Terra, Wychunis, Holiday, and Anderson, all claims against Pennycuick, and McCary's state law negligence claims against John Does 1 and 4.  The Court is prepared to serve McCary's Eighth Amendment failure to protect claims against John Doe I, Wychunis, Holiday, and Anderson, and his state law negligence claims against Wychunis and John Does 2 and 3 for a responsive pleading.  McCary will be granted the option of proceeding at this time on the claims that survived statutory screening, or filing an amended complaint to cure the deficiencies in his Complaint described herein.

## I.     FACTUAL ALLEGATIONS[1]

The gravamen of McCary's claims is that he was subjected to retaliation, including extended placement on the RHU, denial of participation in various programs made available to inmates, denial of protection from harm by other inmates, and punishment when he did not provide information in connection with Defendant John Doe 1's drug smuggling investigation. (*See* Compl.)  The events giving rise to McCary's claims occurred at SCI Phoenix and began on February 29, 2024, when John Doe 1 searched his cell for suspected illicit drugs, damaging McCary's legal documents in the process.  (*Id*. at 10.)  Doe 1 located illicit drugs in a locker

---

[1] Unless otherwise stated, the factual allegations set forth in this Memorandum are taken from McCary's Complaint (ECF No. 2).  The Court adopts the pagination supplied by the CM/ECF docketing system.  Where appropriate, grammar, spelling, and punctuation errors in McCary's pleading will be corrected for clarity.

belonging to McCary's cellmate Tyrone Baker but accused McCary of owning the drugs.  (*Id.*)

Doe 1 also told Baker, who was present during the search, "You should have f***ed your cellie

up, he's the reason you're going to the hole," and "You know your cellie is going to rat on you, I

am telling you he's a rat and everybody in security got information from him," and "You know

he's gonna pin this on you."  (*Id.*)  Doe 1 also commented to McCary, "I'm gonna tell everybody

that you're a f***ing snitch," and "I'm gonna make sure your cellie f***s you up," and "I am

gonna be your worst nightmare," and "When I am done sending everybody in this place emails,

you'll never get another program or good job," and "I am putting you on the facilities watch list

so good luck trying to get anything."  (*Id.*)

Following the search, Doe 1 placed McCary in handcuffs and escorted him to the

Security Department body scanner.  (*Id.* at 11.)  When the body scan revealed nothing, McCary

was released.  (*Id.*)  Shortly thereafter, on February 29, however, Doe 1 again placed McCary in

handcuffs and escorted him to the RHU, to remain there pending investigation.  (*Id.*)  His

cellmate, too, was removed to the RHU, also pending investigation, and placed in a cell with

McCary.  (*Id.*)  McCary remained on the RHU for seven days without being served with a

misconduct or participating in a hearing.  (*Id.* at 11-12.)  On March 1, 2024, he filed a grievance

against Doe 1, which he avers was never addressed.[2]  (*Id.* at 12.)  McCary claims that his

placement on the RHU by Doe 1 was in retaliation for McCary's refusal to provide information

pertaining to Doe 1's drug investigation, information McCary claims not to have possessed, and

that his continued placement on the RHU was in retaliation for the grievance he filed against Doe

1.  (*Id.*)  He further claims that the placement violated his due process rights because, as a result

---

[2] McCary alleges he filed unaddressed grievances against all of the named Defendants.  He does
not allege when the grievances were filed or what conduct he complained of.  (Compl. at 12.)

of the placement, he was not able to participate in certain programs provided by SCI Phoenix, specifically the Therapeutic Community Program. (*Id*. at 12-13.)

While McCary was confined to the RHU, Defendants John Does 2 and 3 did not secure the personal property left behind in his cell, in violation of their responsibilities as set forth in the Pennsylvania Department of Corrections ("DOC") Code of Ethics at Section B(7). (*Id*. at 17.) Specifically, McCary alleges that these Defendants did not list his property and provide him with a confiscation receipt or Personal Property Inventory Receipt in accordance with DC-153M. (*Id*. at 17-18.) As a result, his property was lost and/or damaged. (*Id*. at 18.) As Unit Manager, Defendant Wychunis was responsible for assuring that McCary's property was properly handled but failed to do so. (*Id*.)

McCary alleges that at some time following the February 29 cell search, Doe 1 communicated to Knarr that McCary had been uncooperative with respect to the drug investigation and should be barred from participation in prison programs until he agreed to cooperate. (*Id*. at 13.) Knarr relayed this information to Wychunis, Holiday, Terra, Sipple, Anderson, Nunez, Thomas, and Does 4, 5, and 6. (*Id*.) McCary claims that these communications constituted a retaliatory conspiracy designed to pressure him into acting as an informant. (*Id*.)

McCary also alleges that in response to his filing of grievances against the named Defendants, he was denied protection from assault by an inmate known to be violent. (*Id*. at 14.) More specifically, he alleges that he was assaulted on August 2, 2024 by inmate Dwight Howard, and that Defendants Wychunis, Holiday, and Anderson failed to intervene in the assault. (*Id*. at 14-15.) These Defendants were told the day before the assault that Howard had "scoped out" and entered McCary's cell but did nothing to prevent the August 2 attack. (*Id*. at 15.) McCary

also claims that he was denied participation in prison programs including the Therapeutic Community Program, the State Drug Treatment Program, and Culinary Arts, and was refused a transfer to Honor-Block, R-Block, or S-Block, all in response to his filing of grievances. (*Id*. at 14.) Additionally, he alleges that in August 2024, he was enrolled in the State Drug Treatment Program administered by Defendant Stover. (*Id*. at 33.) However, when contacted by "the Security Department" and told to remove McCary from the program because he did not cooperate with the drug investigation, Stover agreed to do so. (*Id.)*

McCary also alleges that on August 1, 2024, Defendant Pennycuick knowingly encouraged the Pennsylvania DOC, and Terra in particular, to breach its duty of care to DOC prisoners, and sought to manage the DOC by mandating that certain actions (which are not identified) be taken that would exacerbate McCary's conditions of confinement and expose him to danger. (*Id*. at 15.) In response to Pennycuick's demands, Terra, with the assistance of Wychunis, Holiday, and Anderson, allegedly instituted a custom, policy, or practice of ignoring prisoner complaints and allowing staff to ignore acts of violence in the SCI Phoenix housing units, and drug smuggling by staff. (*Id*. at 16.) These Defendants created and acquiesced in these policies, customs, and practices allegedly knowing that as a result, inmates were being assaulted. (*Id*.)

On February 14, 2025, McCary's cell was again searched, and drugs were again found, but his cellmate admitted to owning the drugs. (*Id*. at 37.) During the search, an unidentified Security officer handcuffed McCary tightly from behind causing pain in his wrists, neck, and back. (*Id*.) Following this incident, McCary required x-rays, pain medication, and wraps for his wrist, which was swollen and numb. (*Id*.) After McCary received medical care, and with knowledge of his injury, Defendant Vereen directed him to write a 5,000-word essay. (*Id*.)

5

McCary responded that he could not because of his injury, and Vereen directed him to write the essay or provide information about the two occasions during which drugs were found in his cell. (*Id*. at 38.)  She also threatened to ensure that he did not pass a program that would affect his parole eligibility.  (*Id*.)  McCary told her that he had no information and could not write the essay because of his injury, and Vereen responded, "Good, well it looks like you won't be going home because I am not letting you pass the program."  (*Id*.)  She rejected McCary's offer to provide a verbal essay, stating, "Either you give up some names or write the essay and I don't care that your hand hurts.  I'm glad that it does so either give me names or fail the program you need to go home."  (*Id*.)  McCary attempted to write the essay, experiencing pain.  (*Id*. at 38-39.)

McCary asserts claims for violations of his First, Eighth, and Fourteenth Amendment rights.  (*Id*. at 21-25, 27-31, 39.)  He also asserts a state law negligence claim based on the loss of his personal property.  (*Id*. at 25-27.)  Additionally, McCary asserts a claim based on the inadequacy of the grievance process available at SCI Phoenix.  (*Id*. at 19-20.)  He also includes a claim against Montgomery County pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).  (*Id*. at 35-36.)  He requests a declaratory judgment[3] and an award of money damages.  (*Id*. at 20-21,)

---

[3] McCary requests a declaration that the Defendants' conduct violated his constitutional rights. (Compl. at 20-21.)  Declaratory relief is unavailable to adjudicate past conduct, so McCary's request for this relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

## II.   STANDARD OF REVIEW

The Court will grant McCary leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)); *see also Herrera v. Agents of Pa. Bd. of Prob. & Parole,* 132 F.4th 248, 258 n.5 (3d Cir. 2025).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Because the Complaint was filed *pro se*, the Court holds it "'to less stringent standards than formal pleadings drafted by lawyers.'"  *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (*per curiam*) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'"  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244 (3d Cir. 2013)).  However, *pro se* litigants still must "'allege sufficient facts [in their complaints] to support a claim.'"  *Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other

litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678.

## III.    DISCUSSION

McCary asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018)

(quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right ... [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).  Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### A.      Claims Against Montgomery County

McCary purports to assert a *Monell* claim against Montgomery County.  In support of his claim, he alleges that the county has failed to intervene though it has been aware of spiking violence at SCI Phoenix, and retaliatory conduct by prison officials against inmates who report misconduct.  (*Id*. at 35.)  He claims that the county's consistent failure to act constitutes a policy, practice or custom that imposes cruel and unusual punishment upon inmates.  (*Id*.)  He also asserts that the county has failed to oversee and investigate grievances filed at SCI Phoenix, and that this, too, constitutes a policy or practice the results in the violation of inmates' rights.  (*Id*. at 36.)  However, though SCI Phoenix is located in Montgomery County, it is a state correctional institution and an agency of the Commonwealth of Pennsylvania's Department of Corrections.  (*See* https://www.pa.gov/agencies/cor/state-prisons/sci-phoenix.html, last accessed July 1, 2026.)  McCary does not allege that any of the named SCI Phoenix Defendants acted pursuant to any policy or practice implemented by Montgomery County.  Additionally, McCary does not allege how Montgomery County is legally responsible for the actions of the SCI Phoenix Defendants, who are employees of the Commonwealth.  In short, because McCary does not allege any basis for liability against Montgomery County, his claims will be dismissed with prejudice.

**B.      Claim Based on Inadequacy of Grievance System**

McCary alleges that during the period described in his Complaint, he filed grievances against each of the named SCI Phoenix employees and further alleges that the grievance system in place at SCI Phoenix is constitutionally inadequate because it does not provide for impartial review of the issues raised.  (Compl. at 19-20.)  He also alleges that his grievances were not addressed.  (*Id*. at 12.)  McCary does not identify which Defendant or Defendants failed to address his grievances, referring only to the "Chief Grievance Officer" and the "Facility Manager (Superintendent)" in the section of his Complaint raising this claim. (*Id*. at 19-20.)  The claim, however, is not plausible and will be dismissed.

Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures."  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised by here predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Moreover, the mere investigation or adjudication of a grievance is insufficient to implicate an officer in the underlying injury, as it does not demonstrate "personal knowledge" or violate a constitutional right for the purposes of § 1983. *Higgs v. New Jersey Dep't of Corr.*, No. 24-1712, 2024 WL 3811985, at *2 (3d Cir. Aug. 14, 2024) (*per curiam*) (citing *Rode*, 845 F.2d at 1208); *see also Gerholt*, 858 F. App'x at 34 ("merely responding to or reviewing a grievance does not rise to the level of personal involvement" that is required to state a constitutional claim) (citing *Rode*, 845 F.2d at 1208). Thus, a prison official's mere involvement in the grievance process, alone, is not actionable under § 1983. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

McCary's claim based on the alleged inadequacy of the grievance system is not plausible and will be dismissed. This dismissal will be with prejudice because the deficiency described cannot be cured through further pleading. *See Drummond v. Angelucci*, No. 23-4767, 2024 WL 2136284, at *11–12 (E.D. Pa. May 10, 2024) (dismissing claims based on prison grievance system with prejudice at screening stage); *Caterbone v. Lancaster Cnty. Prison*, No. 19-2052, 2019 WL 2774162, at *3 (E.D. Pa. July 2, 2019), *aff'd*, 811 F. App'x 721 (3d Cir. 2020) (same); *Easton v. Penchishen*, No. 21-CV-5464, 2022 WL 407640, at *2 (E.D. Pa. Feb. 10, 2022) (same).

### C.    Federal Personal Property Based Claims

McCary alleges that while he was assigned to the RHU, Defendants John Does 2 and 3 did not itemize and secure the personal property left behind in his cell, in violation of their responsibilities as set forth in the DOC Code of Ethics at Section B(7). (Compl. at 17.)

Specifically, he alleges that these Defendants did not list his property and provide him with a confiscation receipt or Personal Property Inventory Receipt in accordance with DC-153M. (*Id*. at 17-18.) As a result, his property was lost and/or damaged. (*Id*. at 18.) Additionally, he claims that as Unit Manager, Defendant Wychunis was responsible for assuring that McCary's property was properly handled but failed to do so. (*Id*.)

### 1. Claim Based on Loss of Property

The Court liberally construes McCary's claim against Wychunis based on the loss of his personal property as a due process claim. However, negligent and unauthorized intentional deprivations of property "[do] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process). A correctional facility's grievance procedure provides an adequate postdeprivation remedy for intentional deprivations of property by correctional employees. *Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 422 (3d Cir. 2000) (holding that the Pennsylvania DOC grievance procedures provide adequate post-deprivation remedies). *Mbewe v. Delbalso*, No. 23-2054, 2024 WL 510500, at *3 (3d Cir. Feb. 9, 2024) (*per curiam*) (affirming dismissal of due process claim: "The prison grievance procedure provides an adequate post-deprivation remedy, and the existence of this post-deprivation remedy forecloses [plaintiff's] due process deprivation of property claim" (citation omitted)); *Ransome v. Longstreth*, No. 23-1726, 2023 WL 6122139, at *2 (3d Cir. Sept. 19, 2023) (*per curiam*) (existence of prison grievance process precluded due process claim, even where prisoner alleged violations of the grievance policy). Moreover, "[e]ven if the prison grievance procedures could

be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy." *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (*per curiam*) (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)); *see also Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, at *3 n.3 (3d Cir. Apr. 4, 2023) (*per curiam*) ("Even if the prison's grievance procedures were inadequate to address Lawson's claims, state tort law could serve as an adequate post-deprivation remedy."); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Because both the grievance process and Pennsylvania state law were available to McCary, any due process claim against Wychunis is not plausible, and this claim will be dismissed with prejudice.

### 2.    Claim Based on Violation of DOC Procedures

McCary claims that John Does 2 and 3 violated DOC policies when they failed to itemize property he left in his cell when he was transferred to the RHU. (Compl. at 17-18.) However, "[a]s many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *See Peterson v. Franrak*, No. 25-4538, 2025 WL 3485825, at *6 (E.D. Pa. Dec. 4, 2025) (citing *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (collecting cases)); *Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 n.7 (E.D. Pa. Jan. 2, 2019) ("a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983") (quoting *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)). Similarly, "a violation of internal prison procedures does not create a constitutional violation." *Hernandez-*

13

*Santana v. Little*, No. 24-6447, 2025 WL 2538435, at *5 (E.D. Pa. Sept. 3, 2025)).  McCary's claims against John Does 2 and 3 are not plausible, and they will be dismissed with prejudice.

### D.    Due Process Claims Based on Placement in RHU

McCary claims that his placement on the RHU by John Doe 1 violated his due process rights because he did not receive a misconduct and was not afforded a hearing.  Additionally, he claims that as a result of the placement, he was denied access to Therapeutic Community programming.  (Compl. at 12-13.)  He asserts this claim against Knarr, Wychunis, Holiday, Terra, Sipple, Anderson, Nunez, Thomas, Stover, and all Doe Defendants.  (*Id*. at 27.)

#### 1.  Placement In RHU

McCary claims that his placement in the RHU by John Doe 1 was fraudulent, and that he did not receive written notice of a misconduct or a hearing in connection with the placement. (Compl. at 11-12, 16.)  The Court understands him to be asserting Fourteenth Amendment due process claims against John Doe 1.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie."  *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004).  In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court shifted the focus of the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.  *See id.* at 481.  The Court reasoned, *inter alia*, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of

14

an inmate's sentence. *See id*. at 485. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* at 484. "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014); *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017) (stating that in deciding whether conditions are atypical and significant for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life."). In determining whether a hardship is atypical or significant, the relevant comparator is the general population. *Williams* at 564.

In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest. *See Sandin*, 515 U.S. at 486; *see also Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (no liberty interest triggered by 90-day placement in disciplinary segregation); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (no liberty interest triggered by seven-month placement in disciplinary confinement). Moreover, "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *See Parks v. O'Shaughnessy*, No. 14-1268, 2016 WL 4385869, at *4 (M.D. Pa. May 3, 2016); *see also Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007) (concluding that "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation"). Thus, absent a protected liberty interest, a prisoner cannot maintain claims regarding alleged procedural defects prior to and during his misconduct

proceedings.  McCary alleges that his placement on the RHU was "fraudulent," that he received no written misconduct, was not afforded a hearing, and that he remained on the RHU for seven days.  Because seven days is far less time than that deemed insufficient to support a due process claim in Sandin, McCary cannot plausibly state a due process claim for any procedural defect related to his placement on the RHU and this claim will be dismissed with prejudice.

### 2.  Denial of Access to Special Programming

McCary also claims that because of his placement in the RHU, he was denied access to certain special programming.  (Compl. at 12-13.)  He asserts this claim against Defendants Knarr, Wychunis, Holiday, Terra, Sipple, Anderson, Nunez, Thomas, and Jane/John Does 1-6. (*Id*. at 27-29.)  Additionally, he claims that Defendant Stover, upon direction from other Defendants, denied him the opportunity to participate in the Community Therapeutic Program. (*Id*. at 33-34.)  The Court understands McCary to assert due process claims based on the denial of access to special programs.  These claims are not plausible, because inmates have "no constitutionally protected interest in access to rehabilitative programs as the failure to secure treatment in such programs does not impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Evans v. Perkins*, No. 07-100, 2007 WL 625922, at *4 (M.D. Ala. Feb. 27, 2007) (quoting *Sandin,* 515 U.S. at 484 and dismissing as frivolous upon statutory screening claim based on lack of access to rehabilitative programming, because inmate "asserted infringement of a non-existent legal interest"); *Dixon v. Price*, No. 07-662, 2007 WL 2784410, at *5 (M.D. Ala. Sept. 24, 2007) (same); *Inmates of Occoquan v. Barry,* 844 F.2d 828, 836 (D.C.Cir.1988) ("[C]ertain 'deprivations,' such as limited work and educational opportunities, do not even fall within the broad compass of punishments" within the

16

meaning of the Constitution.").  Accordingly, McCary's claims based on denial of access to special programming will be denied with prejudice.

### D.    First Amendment Retaliation Claims

#### 1.    Claims Based on Refusal to Provide Information

McCary claims that all of the named Defendants retaliated against him because he would not or could not provide information pertaining to Defendant Doe 1's drug investigation. (Compl. at 12, 24-25.)  He contends that his decision to decline to provide information falls within his First Amendment rights.  (*Id*.)  He claims that John Doe 1 placed him on the RHU because he would not provide information pertaining to Doe 1's drug investigation.  (*Id*.)  He further claims that Stover denied him access to a drug treatment program at the request of SCI Phoenix's Security Department in retaliation for his refusal to provide information pertaining to the drug investigation.  (*Id*. at 33-34.)  He also claims that Defendants Doe I, Knarr, Wychunis, Holiday, Terra, Sipple, Anderson, Nunez, Thomas, Jane/John Does 4, 5, and 6 engaged in a conspiracy intended to retaliate against him for refusal to provide information to Doe 1.  (*Id*. at 13.)  Additionally, he claims that Ms. Vereen punished him in retaliation when he declined to provide names or information pertaining to the drug investigation.  (*Id*. at 37-39.)  For the following reasons, these retaliation claims will be dismissed with prejudice.

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  "As to the

17

first element, refusal to act as an informant is not constitutionally protected activity." *Howard v. English*, No. 23-294, 2024 WL 5410538, at *3 (W.D. Pa. Nov. 15, 2024) (granting motion to dismiss inmate's First Amendment retaliation claim because plaintiff could not establish first requisite element of claim). *See also Woolfolk v. Meier*, No. 17-3513, 2018 WL 1773397, at *4 (E.D. Pa. Apr. 12, 2018) (dismissing prisoner's retaliation claim because refusing to tell officers which prisoners possessed contraband is not protected activity); *Molina v. Wenerowicz*, No. 12-5824, 2016 WL 6876319, at *9 (E.D. Pa. Nov. 22, 2016) (denying motion to dismiss retaliation claim based on filing of grievances, but noting that inmate's complaint "d[id] not allege a protected activity based merely on the plaintiff's refusal to 'snitch' on other inmates"). Accordingly, McCary's retaliation claims based on his refusal to provide information pertaining to a drug investigation will be dismissed with prejudice.

### 2.    Claims Based on Filing of Grievances

McCary also separately claims that he filed grievances against all of the SCI Phoenix Defendants, and that, too, prompted retaliation. Specifically, he alleges that Doe 1 extended his assignment to the RHU because of a grievance McCary filed. (Compl. at 12.) He also alleges that the "Defendants" denied him access to federally or state funded programming and refused to transfer him to preferential housing because of the grievances.[4] (*Id*. at 14.)

Although a prisoner has no constitutional right to a grievance process, *see Gerholt*, 858 F. App'x at 34, a prisoner can state a claim based on retaliation for filing a grievance. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (holding that a prisoner's filing of a grievance is constitutionally protected conduct) (citing *Mitchell*, 318 F.3d at 530; *Davis v.*

---

[4] McCary also claims he was denied protection from an assault by another inmate in retaliation for filing grievances. (Compl. at 13.) However, the Court construes McCary's failure to protect claim as arising under the Eighth, rather than the First Amendment. See infra, Section  .

*Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)).  McCary's allegation that he filed grievances against the named Defendants satisfies the first element of a retaliation claim.  To state a plausible claim, he must also allege that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and that the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'"  *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original).  "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions."  *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment.").  Additionally, the United States Court of Appeals for the Third Circuit has found the following constitute adverse action for purposes of retaliation claims: "several months in disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs."  *Wilson-Walker v. Gambone*, No. 24-4828, 2024 WL 4438774, at *7 (E.D. Pa. Oct. 7, 2024) (quoting *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (further citations omitted) (dismissing on statutory screening retaliation claim because taunts and verbal abuse do not constitute adverse action).  The timing of the allegedly retaliatory behavior relative to the

19

constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.  *See Watson*, 834 F.3d at 422.

McCary alleges that John Doe 1 placed him on the RHU on February 29 pending the completion of the drug investigation, before he filed a grievance against Doe 1 on March 1. (Compl. at 12.)  While placement on an RHU can constitute an adverse action that will support a First Amendment retaliation claim, *see Mitchell*, 318 F.3d at 530-31, the fact that the grievance was filed after the RHU placement refutes any causal connection between the placement and the subsequent protected conduct.  McCary's retaliation claim against John Doe 1 based on his filing the March 1 grievance will be dismissed with prejudice

McCary also claims that otherwise unidentified "Defendants" against whom he filed grievances interfered with his ability to participate in available programming and refused to transfer him to preferential housing.  (Compl. at 14.)  As pled, however, his claims are not plausible, because McCary does not allege specifically what each of the Defendants did or did not do to violate his constitutional rights.  *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'").  This manner of pleading also fails to plausibly establish that each of the Defendants was personally involved in violating McCary's rights, as required.  *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.); *Dooley*, 957 F.3d at 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'")  McCary will be granted leave to amend these claims.

20

### E.    Claims Based on Failure to Protect

#### 1.    Claim Against John Doe 1

McCary alleges that after finding drugs in his cell during the February 2025 search, Doe 1 told his cellmate Baker, who was present during the search, "You should have f\*\*\*ed your cellie up, he's the reason you're going to the hole," and "You know your cellie is going to rat on you, I am telling you he's a rat and everybody in security got information from him," and "You know he's gonna pin this on you." (*Id.*)  The Court understands McCary to be asserting an Eighth Amendment claim against John Doe I based on his failure to protect McCary from Baker.

The Eighth Amendment, made applicable to the individual states through the Fourteenth Amendment, prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes.  *See Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981).  Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and must take reasonable measures to guarantee the safety of the inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  Courts have found that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotations omitted).  "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'"  *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347).

For a failure to protect claim against a prison official to be plausible, a plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm.  *See Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x

785, 790 (3d Cir. 2019) (*per curiam*).  Deliberate indifference in the context of a failure to protect claim is a subjective standard that requires the plaintiff to allege plausibly that the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware."  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).  "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk."  *Id.* (citing *Farmer*, 511 U.S. at 844).

"Courts in the Third Circuit have recognized that being labeled a 'snitch' may constitute an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate."  *Williams v. Thomas*, No. 12-1323, 2013 WL 1795578, at *5 (E.D. Pa. Apr. 29, 2013) (citing cases).  Moreover, allegations to the effect that a correction officer actively solicited inmates to assault another inmate plausibly support an Eighth Amendment claim.  *Pagan v. Morton*, No. 23-2010, 2025 WL 757478, at *13-*14 (M.D. Pa. Mar. 10, 2025) (denying motion to dismiss Eighth Amendment claim because allegations that correctional officer encouraged other inmates to harm plaintiff satisfied the objective and subjective elements of a failure to protect claim) (citations omitted)  McCary alleges that John Doe I both labelled him a snitch and suggested that his cellmate should have harmed him, before placing both inmates in a cell together on the RHU.  At this early stage of the litigation, McCary

22

has stated a plausible failure to protect claim against John Doe I and this claim will be served for a responsive pleading.[5]

### 2.    Claims Against Wychunis, Holiday, and Anderson

McCary also asserts failure to protect claims against Wychunis, Holiday, and Anderson for failing to prevent and then failing to intervene in inmate Dwight Howard's August 2, 2024 assault on him.  (Compl. at 15-16.)  In support of these claims, he alleges that he was assaulted on August 2, 2024 by inmate Dwight Howard, and that Defendants Wychunis, Holiday, and Anderson failed to intervene in the assault.  (*Id*. at 14-15.)  These Defendants were told the day before the assault that Howard had "scoped out" and entered McCary's cell but did nothing to prevent the August 2 attack.  (*Id*. at 15.)  At this early stage of the litigation, these allegations support a plausible inference that Wychunis, Holiday, and Anderson were aware of the risk to McCary's safety posed by Howard, as well as a plausible inference that they were deliberately indifferent to that risk when they took no steps to protect him from attack, and then failed to intervene while the assault was ongoing.  These claims will be served for a responsive pleading.

### F.    Claims Based on Supervisory Positions

McCary claims that Superintendent Terra, and Wychunis, Holiday, and Anderson (described as the Q-Unit management team), having been subjected to political pressure by Pennycuick (which McCary does not describe) have "created a policy, custom, practice and culture of ignoring prisoner complaints" and, as a result, inmates, including McCary are endangered because staff are permitted to ignore acts of violence and drug smuggling.  (Compl.

---

[5] McCary does not allege that he suffered harm as a result of John Doe I's conduct.  However, the failure to allege hare does not render a failure to protect claim implausible.  Instead, it affects the type of damages the plaintiff may seek to recover.  *See Pagan*, 2025 WL 757478, at *13 (citations omitted).

at 16.)  The Court understands McCary to assert his claims against these Defendant because they hold supervisory positions.  These conclusory and undeveloped allegations do not support plausible claims based on these Defendants' supervisory roles.

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Chavarriaga v. New Jersey. Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

The first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga*, 806 F.3d at 227.

McCary's allegations, which merely parrot the elements of a supervisory liability claim, do not plausibly support the claims he asserts. *Iqbal*, 556 U.S. at 678. Because it may be possible for McCary to alleged additional facts to state plausible claims against these Defendants, his claims will be dismissed without prejudice, and he will be granted leave to amend these claims.

### G.    Claims Against Ms. Vereen

McCary asserts an Eighth Amendment cruel and unusual punishment claim against Vereen. (Compl. at 37-38.) In support of that claim, he alleges that with knowledge of an injury

25

to his wrist, Defendant Vereen directed him to write a 5,000-word essay. (*Id*. at 37.) McCary responded that he could not because of his injury, and Vereen directed him to write the essay or provide information about the two occasions during which drugs were found in his cell. (*Id*. at 38.) She also threatened to ensure that he did not pass a program that would affect his parole eligibility. (*Id*.) McCary told her that he had no information and could not write the essay because of his injury, and Vereen responded, "Good, well it looks like you won't be going home because I am not letting you pass the program." (*Id*.) She rejected McCary's offer to provide a verbal essay, stating, "Either you give up some names or write the essay and I don't care that your hand hurts. I'm glad that it does so either give me names or fail the program you need to go home." (*Id*.) McCary attempted to write the essay, experiencing pain. (*Id*. at 38-39.) McCary's Eighth Amendment claim against Vereen is not plausible.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). The factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v.*

26

*Albers*, 475 U.S. at 321.)  Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force."  *Id.* at 104.  Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries.  *Id*. at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).  The Eighth Amendment does not protect against a *de minimis* use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind."  *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U.S. at 9-10).

As described by McCary, Vereen's insistence that he write an essay while his hand hurt may have been unwise, but this isolated incident simply does not rise to the level of conduct that is "repugnant to the conscience of mankind."  As such, this claim is not plausible and will be dismissed.  Because amendment would not cure this deficiency, the dismissal will be with prejudice.

### H.   Claims against Pennycuick

McCary asserts a variety of claims against Pennsylvania State Senator Tracy Pennycuick based on her alleged efforts to exert political influence over Superintendent Terra and thereby influence management of SCI Phoenix.  However, the allegations describing her conduct are vague and conclusory, and do not describe any personal conduct engaged in by Pennycuick that resulted in a violation of McCary's rights.  As a result, these claims are not plausible.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley*, 957 F.3d

at 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

McCary alleges that Pennycuick "knowingly sought to cause the Pennsylvania Department of Corrections, namely Defendants Terra, et al., to breach its duty to exercise care, custody and control over state prisoners in conformity with the Eighth Amendment" and [was] thereby deliberately indifferent to his health and safety.  (*Id*. at 31.)  He further claims without much in the way of explanation that she sought to use her political office to have mandate that McCary be housed with inmate Baker.  (*Id*.)  McCary does not describe the nature of the mandates she insisted on, who she spoke to or when or where, and does not state how he suffered from her alleged undescribed conduct.  In these circumstances, McCary has not stated a plausible claim against Pennycuick.  He will be granted leave to amend this claim to explain in an amended complaint the "'who, what, where, when and why' of [her] claim[s]" against Pennycuick. *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)).

28

### I.    State Law Claims

In addition to his federal claims, McCary asserts a state law negligence claim against John Does 1, 2, 3 and 4 and against Wychunis for failure to properly process and protect the personal property left in his cell when he was temporarily placed on the RHU.  (Compl. at 25-27.)  The negligence claims asserted against John Does 1 and 4 will be dismissed without prejudice, because there are no factual allegations in the Complaint describing any conduct engaged in by these Defendants with respect to McCary's personal property.  (*See* Compl.)  The negligence claims against John Does 2 and 3 and Wychunis will be served for a responsive pleading.

### IV.    CONCLUSION

For the foregoing reasons, the Court will grant McCary leave to proceed *in forma pauperis*.  The following claims will be dismissed with prejudice: claims against Montgomery County, claims based on the inadequacy of the SCI Phoenix grievance system, federal claims based on loss of personal property, First Amendment retaliation claims based on McCary's refusal to provide information in connection with a drug investigation, First Amendment retaliation claim against John Doe I, Fourteenth Amendment due process claims based on placement on a Restricted Housing Unit ("RHU") and denial of participation in special programming and housing.  The following claims will be dismissed without prejudice: First Amendment retaliation claims against all Defendants except John Doe I, supervisory liability claims against Terra, Wychunis, Holiday, and Anderson, all claims against Pennycuick, and McCary's state law negligence claims against John Does 1 and 4.  The Court is prepared to serve McCary's Eighth Amendment failure to protect claims against John Doe I, Wychunis, Holiday, and Anderson, and his state law negligence claims against Wychunis and John Does 2 and 3 for a

responsive pleading.  McCary will be granted the option of proceeding at this time on the claims that survived statutory screening, or filing an amended complaint to cure the deficiencies in his Complaint described herein.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002).

An appropriate Order follows.

BY THE COURT:

*/s/ John Milton Younge*

JOHN M. YOUNGE, J.